753 F.2d 857
 ROBERT-GAY ENERGY ENTERPRISES, INC. and Lloyd D. McCarter,
Plaintiffs-Appellants,
v.
STATE CORPORATION COMMISSION OF KANSAS, Richard C. (Pete)
Loux, Jane T. Roy, Phillip R. Dick, Individually and as
members of said Commission and their respective successors
in office, Defendants-Appellees.
 No. 83-1650.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 4, 1985.
 
 Robert L. Taylor, Hutchinson, Kan., for plaintiffs-appellants.
 Brian J. Moline, Topeka, Kan., and Susan Ellis, Wichita, Kan., for defendants-appellees.
 Before HOLLOWAY, Chief Judge, and SETH and SEYMOUR, Circuit Judges.
 HOLLOWAY, Chief Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiffs-appellants Robert-Gay Energy Enterprises, Inc. (Robert-Gay) and Lloyd D. McCarter (McCarter) appeal the denial of their application for a temporary restraining order and preliminary injunction and the dismissal of their complaint for lack of subject matter jurisdiction.
 
 
 3
 * McCarter owns an undivided interest in and to the minerals of certain real property in Edwards County, Kansas. I R. 2. He executed an oil and gas lease granting to the lessee the right to drill for and produce oil and gas from said real property. Robert-Gay is the successor in interest to all rights under the lease. Id.
 
 
 4
 Robert-Gay filed an application with defendants for a location exception to drill an oil well on said real property nearer than 330 feet to a lease or unit boundary line. Id. at 8. Defendants found and concluded that
 
 
 5
 applicant willfully and intentionally violated the Commission rules and regulations by drilling the subject well prior to approval from the Commission and with complete knowledge that the matter was set for hearing due to protests filed by offset operators and owners of unleased minerals.
 
 
 6
 16. The Commission finds that the application should be granted as to the well location but denied as to the request for full three-tenths basic allowable and a bonus allowable. The Commission finds that the correlative rights of interested parties could be violated if the application is granted in full.
 
 
 7
 We find that the subject well should be granted an allowable of five (5) barrels per day based on the provisions of K.A.R. 82-3-207(B). This determination assumes that applicant's well is located 68 feet from the nearest lease or unit boundary line not disputed by any of the parties. The assignment of this allowable will protect the correlative rights of all parties.
 
 
 8
 The assignment of a bonus allowable is a matter of the Commission's discretion (K.A.R. 82-3-207). The Commission finds that because of the uncertainty as to the actual lease line and applicant's willful violation of the Commission's rules no bonus allowable should be granted for the well.
 
 
 9
 The Commission further finds that the applicant should provide monthly production information on the subject well to assist the Commission staff in monitoring production. Such information should be supplied until further notice from the Commission.
 
 
 10
 Id. at 12. (emphasis added).
 
 
 11
 Plaintiffs Robert-Gay and McCarter then filed a complaint and an application for temporary restraining order and preliminary injunction against defendants in the federal district court. Id. at 14-16. Plaintiffs averred that the order of the Commission did not reasonably relate to the health, safety or general welfare and instead constituted a taking of their property without just compensation in violation of the Fourteenth Amendment. At a court hearing in May 1983 the defendants moved orally for dismissal for lack of jurisdiction, after discussion among the court and counsel for both sides of Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and other cases. The court denied the plaintiffs' application and dismissed plaintiffs' complaint "for want of subject matter jurisdiction, on the authority of Burford v. Sun Oil Co., 319 U.S. 315 [63 S.Ct. 1098, 87 L.Ed. 1424] (1943)."[1] Id. at 17.
 
 
 12
 On appeal, plaintiffs contend that in failing to distinguish between subject matter jurisdiction and the doctrine of abstention, the trial court erred in dismissing the complaint for want of subject matter jurisdiction. Plaintiffs say that governmental regulations can amount to a "taking" of property without just compensation in violation of the federal Constitution; that the low daily allowable set by defendants on plaintiffs' oil and gas well to punish plaintiff Robert-Gay rendered the production of the well unprofitable and constituted a taking; and that the district court had subject matter jurisdiction of their constitutional claim under 28 U.S.C. Sec. 1343 and 42 U.S.C. Sec. 1983.
 
 
 13
 Plaintiffs also say that reliance on the doctrine of abstention set forth in Burford requires a trial court to make a factual analysis of the proceedings to determine if the facts fall within the narrow confines of the doctrine, which the trial court failed to do and that on the face of the complaint, Thompson v. Consol. Gas Utilities Corp., 300 U.S. 55, 57 S.Ct. 364, 81 L.Ed. 510 (1937), rather than Burford, more closely parallels this case because Thompson involved an action based on a claim of deprivation of constitutional rights by a taking under an administrative order.[2] Plaintiffs further say that a state court is limited to determining if defendants' order is either arbitrary or capricious and would have no power to address or give a remedy on the issues presented in the complaint.
 
 The Supreme Court stated that
 
 14
 [a]bstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-189 [79 S.Ct. 1060, 1062-63, 3 L.Ed.2d 1163] (1959). "[I]t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it." Alabama Pub. Serv. Comm'n. v. Southern R. Co., 341 U.S. 341, 361 [71 S.Ct. 762, 774 95 L.Ed. 1002] (1951) (Frankfurter, J., concurring in result).
 
 
 15
 Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813-14, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).
 
 
 16
 Supreme Court decisions have confined the circumstances appropriate for abstention to three general categories, one of which is where "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Id. at 814, 96 S.Ct. at 1245. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), is one example cited by the Court in this category. The Court said that in Burford it had held that
 
 
 17
 a suit seeking review of the reasonableness under Texas state law of a state commission's permit to drill oil wells should have been dismissed by the District Court. The reasonableness of the permit in that case was not of transcendent importance, but review of reasonableness by the federal courts in that and future cases, where the State had established its own elaborate review system for dealing with the geological complexities of oil and gas fields, would have had an impermissibly disruptive effect on state policy for the management of those fields. See also Alabama Pub. Serv. Comm'n v. Southern R. Co., supra.
 
 
 18
 (footnote omitted). Colorado River Water Conservation Dist., 424 U.S. at 814-15, 96 S.Ct. at 1244-45.
 
 
 19
 Here Kansas Statutes Annotated 55-603 provides in part that "[t]he state corporation commission is authorized and it shall be its duty, to so regulate the taking of crude oil from any pool within the State of Kansas as to prevent waste therein or, independently of waste, to prevent the inequitable or unfair taking of crude oil therefrom." K.S.A. 55-604 provides in part that "[t]he commission ... shall have authority to make and enforce rules, regulations and orders for the prevention of waste ... and for carrying out and enforcing each and all of the provisions of this act." K.S.A. 55-704 provides in part that "[t]he commission shall promulgate such rules and regulations as may be necessary for the prevention of waste ... [and] the protection of all water, oil or gas-bearing strata encountered in any well ..." It is thus apparent that the State of Kansas has "established its own elaborate review system for dealing with the geological complexities of oil and gas fields."
 
 
 20
 If adequate state court review of an administrative order based upon predominantly local factors is available, intervention of a federal court is not necessary for the protection of federal rights. Alabama Pub. Serv. Comm'n v. Southern Ry. Co., 341 U.S. 341, 349, 71 S.Ct. 762, 768, 95 L.Ed. 1002 (1951). K.S.A. 55-606 provides in part:
 
 
 21
 Any action for judicial review of any rule, regulation, order or decision of the commission may be brought against the commission in the district court of any county in the state wherein the property affected thereby is located, or, if the property affected thereby is located in different counties, then the jurisdiction shall lie in either of such counties.
 
 
 22
 * * *
 
 
 23
 Any rule, regulation, order or decision of the commission may be superseded by the district court upon such terms and conditions as it may deem proper.
 
 K.S.A. 66-118d provides in part:
 
 24
 Said proceedings for review shall be for the purpose of having the lawfulness or reasonableness of the original order or decision or the order or decision on rehearing inquired into and determined, and the court hearing said cause shall have the power to vacate or set aside such order or decision on the ground that such order or decision is unlawful or unreasonable.
 
 
 25
 (emphasis added). The scope of judicial review of an order of the State Corporation Commission of Kansas (KCC), then, "is limited to a determination of the lawfulness and reasonableness of the order." Central Kansas Power Co. v. State Corp. Comm'n, 221 Kan. 505, 561 P.2d 779, 785 (1977).
 
 
 26
 Here, the State district court found the Commission's order unlawful and unreasonable in the allowable it set for oil production from plaintiffs' well. However, on appeal from that ruling the Kansas Supreme Court found that the KCC order "setting the allowable and denying appellees the [daily bonus allowable] is lawful and reasonable" but that if appellee can rebut the presumption of a violation of correlative rights and the commission of waste, appellee is entitled to take its fair and equitable portion of the production from the pool. Robert-Gay Energy Enter., Inc., v. State Corp. Comm'n of Kansas, 685 P.2d 299, 304 (Kan.1984).[3] The Kansas Supreme Court also found that the statutes and KCC regulations governing the punishment for violations of correlative rights and acts constituting waste do not violate constitutional limitations. Id. at 303-04.[4] We are satisfied that Kansas statutes provide for adequate state court review of orders of the State Corporation Commission of Kansas. Here, as in Burford,
 
 
 27
 [t]he State provides a unified method for the formation of policy and determination of cases by the Commission and by the state courts. The judicial review of the Commission's decisions in the state courts is expeditious and adequate. Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts. On the other hand, if the state procedure is followed from the Commission to the State Supreme Court, ultimate review of the federal questions is fully preserved here. Cf. Matthews v. Rodgers, 284 U.S. 521 [52 S.Ct. 217, 76 L.Ed. 447]. Under such circumstances, a sound respect for the independence of state action requires the federal equity court to stay its hand.
 
 
 28
 Burford, 319 U.S. at 333-34, 63 S.Ct. at 1107.
 
 
 29
 Accordingly we affirm the district court's abstention under Burford and the dismissal of the case.[5]
 
 
 
 [1]
 We note that the district court dismissed only the complaint rather than the entire action
 In order to determine whether a trial court's dismissal of a complaint is a final, appealable order, we must scrutinize the order to determine whether the trial court intended to dispose of the plaintiff's entire cause of action. Bragg v. Reed, 592 F.2d 1136, 1138 (10th Cir.1979); Petty v. Manpower, Inc., 591 F.2d 615, 617 (10th Cir.1979) (per curiam).
 Sooner Products Co. v. McBride, 708 F.2d 510, 511 (10th Cir.1983) (per curiam). A review of the May 24, 1983 order reveals the clear intent of the district court to dispose of plaintiffs' entire cause of action. The May 24 order was final and appealable at that time.
 
 
 [2]
 We think that Burford rather than Thompson is applicable. In Thompson the gas proration order issued by the Railroad Commission of Texas was held void under the Constitution as a taking of private property for private benefit. Thompson v. Consol. Gas Utilities Corp., 300 U.S. 55, 79-80, 57 S.Ct. 364, 375-76, 81 L.Ed. 510 (1937). As stated by the Supreme Court,
 the sole purpose of the limitation which the order imposes upon the plaintiffs' production is to compel those who may legally produce, because they have market outlets for permitted uses, to purchase gas from potential producers whom the statute prohibits from producing because they lack such a market for their possible product. Plaintiffs' operations are neither causing nor threatening any overground or underground waste. Every well owner in the field is free to produce the gas, provided he does not do so wastefully. He is legally and, so far as appears, physically free to provide himself with a market and with transportation and marketing facilities. There is no basis for a claim that his right, or opportunity, will be interfered with by a disportionate taking by any one of those who may legally produce.
 Id. at 77, 57 S.Ct. at 374-75. Here, unlike the circumstances in Thompson, it was found by the State Corporation Commission of Kansas that "the correlative rights of interested parties could be violated if the application [of Robert-Gay] is granted in full." I R. 12.
 
 
 [3]
 Plaintiffs objected to the defendants' inclusion in the record of additional matters, including the Kansas Supreme Court's decision in Robert-Gay Energy Enter., Inc. v. State Corp. Comm'n of Kansas, 685 P.2d 299 (Kan.1984), except by proper procedure. We may take judicial notice of this decision. Fed.R.Evid. 201
 
 
 [4]
 We note that
 [f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court as follows:
 * * *
 (3) By writ of certiorari, where the validity of a treaty or statute of the United States is drawn in question or where the validity of a State statute is drawn in question on the ground of its being repugnant to the Constitution, treaties or laws of the United States, or where any title, right, privilege or immunity is specially set up or claimed under the Constitution, treaties or statutes of, or commission held or authority exercised under, the United States...
 28 U.S.C. Sec. 1257 (1976).
 As noted above, the Kansas Statutes provide for review of the Commission's order on grounds including the constitutional claims in the State district court and the Kansas Supreme Court. Defendant obtained such review in Robert-Gay Energy Enter., Inc. v. State Corp. Comm'n of Kansas, 235 Kan. 951, 685 P.2d 299 (1984). Plaintiffs therefore were able to assert their constitutional claim through the state courts and could seek review by certiorari in the United States Supreme Court. See Urbano v. Bd. of Managers of New Jersey State Prison, 415 F.2d 247, 254 n. 21 (3d Cir.1969), cert. denied, 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970); C. Wright, Law of Federal Courts Sec. 52 (1983); 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4245 (1978); see Alabama Pub. Serv. Comm'n v. Southern Ry. Co., 341 U.S. 341, 349, 71 S.Ct. 762, 768, 95 L.Ed. 1002 (1951); cf. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). While plaintiffs did not seek review of the Kansas Supreme Court decision in the Supreme Court of the United States, that remedy was available.
 
 
 [5]
 As noted above, the district court dismissed plaintiffs' complaint "for want of subject matter jurisdiction, on the authority of Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)." I R. 17. The district court had subject matter jurisdiction. However, "[i]n the review of judicial proceedings the rule is settled that if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937). The disposition made by the district court--a dismissal of the federal case--was proper on the Burford abstention ground. See Burford, 319 U.S. at 334, 63 S.Ct. at 1107; C. Wright, Law of Federal Courts Sec. 52 (1983)